MARTHA LATTA, PLAINTIFF-APPELLANT, v.
JAMES T. CAULFIELD, DEFENDANT-RESPONDENT.

Argued October 31, 1978—Decided February 7, 1979.

Mr. *Herbert J. Kessler* argued the cause for appellant (*Messrs. Berenson, Kessler* and *Woodruff*, attorneys).

Mr. *Michael T. Cooney* argued the cause for respondent (*Messrs. Hueston, Hueston* and *Sheehan*, attorneys).

The opinion of the court was delivered by

PASHMAN, J. We are called upon in this case to decide whether certain jury instructions regarding contributory negligence and proximate cause were so inaccurate and misleading as to require reversal of the verdict returned below. Upon careful scrutiny of the record, we conclude that the trial court's charge failed to adequately convey the pertinent legal principles and that this error could have led the jury to a result it might otherwise not have reached. We therefore affirm the result reached by the Appellate Division and hold that a new trial is required. In so doing we do not endorse its reasoning.

Martha Latta, the plaintiff herein, resided at 303 East Fifth Street, Plainfield, near the intersection of East Fifth and Roosevelt Streets. On the evening of April 29, 1972, while sitting on her front porch, she attempted to quell an argument involving 20 to 25 youths. When her efforts proved unsuccessful, she went into her house to call the police. Before she reached the telephone, however, her granddaughter notified her that a police car had already arrived on the scene. Mrs. Latta came back out of the house, saw that a police car was parked directly across the street, and started towards it in order to request the officer's assistance in stopping the disturbance. She had reached a point somewhere between the street's center line and the police car when she was struck by Mr. Caulfield's oncoming vehicle.

On November 11, 1974 plaintiff filed this negligence suit to recover for the injuries sustained as a result of that collision. A jury trial was held, limited solely to the issue of liability. Divergent testimony was presented relating to the exact circumstances of the accident.

Plaintiff testified that she looked both ways before crossing the street and saw no cars coming toward her. She began walking across the street and

A. [t]hen just as I got halfway in the street or across the white line . . . I made but three more steps, and then I saw this car

and I throw up my hands, I thought maybe he was going to let me pass.

Q. Did he let you pass?

A. No, he didn't.

Q. What happened?

A. He hit me.

\*　　\*　　\*　　\*　　\*　　.\*　　\*ı　　\*ı

Q. Now, how far across the street had you gotten when he hit you?

A. I had gotten three or four feet across from the white line.

Mrs. Latta further testified that she was wearing a blue dress and a pink and yellow apron.

This testimony was contradicted by Mrs. Latta's earlier statements during a pretrial deposition. When deposed, she testified that she first saw the Caulfield vehicle stopped at the red light at the Roosevelt Street intersection and that she thought its driver would allow her to cross before starting up.

Defendant's story was that he stopped for the red light at the Roosevelt Street intersection. When the light changed he proceeded slowly (8–10 m.p.h.) because there was a disturbance up ahead. Although it was dark, the weather was clear and he could see the police car and a group of people nearby. Nevertheless, he did not see Mrs. Latta until the time of impact, whereupon he applied the brakes.

Police officer Leitz testified, under subpoena, on behalf of defendant. He stated that he was sitting in the passenger side of a police car parked on East Fifth Street across from Mrs. Latta's home. He claimed that Mrs. Latta was running across the street when the collision occurred. Furthermore, he stated that she was wearing dark clothing at the time.

At the close of the case, the judge instructed the jury as to negligence, contributory negligence, and proximate cause. Over the objections of defense counsel, he then charged the jury that:

\* \* \* even if you find that Mrs. Latta negligently placed herself in the position in the street exposed to danger, if her position was discoverable by a proper lookout on the part of Mr. Caulfield in time to have avoided the accident and he failed to use reasonable care in making a proper lookout, you may find that such failure by him

was the sole proximate cause of the accident. If that is your find-
ing, then even though both parties may have been negligent, your
verdict would show that only Mr. Caulfield's negligence was the
proximate cause of the accident.

In response to the jury's later request for clarification of
the term "proximate cause," the trial judge repeated the
above instruction, and, over the defense's objections, at-
tempted to convey the meaning of the term through the use
of an example. It involved a hypothetical situation in which
a plaintiff had placed himself in a position of extreme danger
in front of an oncoming motorist. That driver was not
properly watching the roadway and hence struck the plaintiff.
In such a case, the judge stated, the jury could find that
the plaintiff's negligence was not near or "proximate"
enough to the actual accident as to constitute a proximate
cause. Since the driver of the car had a "chance" to avoid
the accident but negligently failed to do so, his actions
would be deemed the sole legal cause of the collision.

The jury then retired to continue its deliberations and,
shortly thereafter, returned a unanimous verdict in favor of
plaintiff. The jurors responded to four special interrogatories
as follows:

1. Was the defendant, James T. Caulfield, guilty of negligence?
   Yes.
2. Did the negligence proximately cause the accident? Yes.
3. Was the plaintiff, Martha Latta, guilty of contributory negli-
   gence? Yes.
4. Was her contributory negligence a proximate cause of the acci-
   dent? No.

Accordingly, judgment on liability was entered in favor of
plaintiff on April 30, 1976. A motion for a new trial was
denied and a trial on damages held.

On appeal, the Appellate Division reversed and remanded
for a new trial. *Latta v. Caulfield,* 158 *N. J. Super.* 151
(App. Div. 1978). It held that the jury charge quoted
above was an "inaccurate and incomplete statement of the

law capable of misleading the jury and constituting reversible error." *Id.* at 153. We granted plaintiff's petition for certification. 77 *N. J.* 481 (1978).

I

Although a variety of acts may contribute to the occurrence of a collision in the sense that absent each such act, the accident would not have transpired, not all such acts are deemed "proximate" or legal causes of the accident. As this Court has stated:

[i]n the trial of cases * *' * where it appears that both parties were in fault, the primary consideration is whether the faulty act of the plaintiff was so remote from the injury as not to be regarded, in a legal sense, as a cause of the accident, or whether the injury was proximately due to the plaintiff's negligence, as well as to the negligence of the defendant. If the faulty act of the plaintiff simply presents the condition under which the injury was received, and was not in a legal sense a contributory cause thereof, then the sole question will be whether, under the circumstances and in the situation in which the injury was received, it was due to the defendant's negligence. *But if the plaintiff's negligence proximately — that is, directly — contributed to the injury, it will disentitle him to a recovery,* unless the defendant's wrongful act was willful, or amounted to an intentional wrong.

[*Pangborn v. Central Railroad Co.*, 18 *N. J.* 84, 102 (1955) (quoting from *Menger v. Laur*, 55 *N. J. L.* 205, 216 (Sup. Ct. 1893) (emphasis supplied)]

As the above quotation makes clear, a jury must consider the actions of both the plaintiff and the defendant in determining whether one or both proximately caused an accident. If the actions of both parties contributed directly to the result, then under the rule of contributory negligence the plaintiff cannot recover. On the other hand, if the plaintiff's negligence was only remotely or indirectly involved so that a condition existed which was not a proximate cause of the accident, then legally only the defendant is responsible.

The jury instruction here at issue focused solely on the actions of defendant. The charge stated that even if

Mrs. Latta negligently placed herself in a dangerous position in the street, Mr. Caulfield might be held liable if he could have avoided the accident through a proper lookout. It thus failed to address the relevant consideration of whether Mrs. Latta could also have avoided the accident had she used proper care after negligently entering the roadway. The importance of such a consideration is obvious. If both parties had a comparable opportunity to avoid the accident by the use of reasonable observation, they are both culpable and there is no reason to hold the defendant solely responsible. In such a case both parties would have proximately caused the collision.

Plaintiff contends that the trial court's charge was in keeping with the language of *Pangborn v. Central Railroad Co., supra,* 18 *N. J.* at 102. Although it is undoubtedly true that the trial judge was attempting to follow *Pangborn,* he unfortunately misconstrued the thrust of that opinion. In *Pangborn,* three plaintiff-high school boys were standing on a sidewalk railroad crossing when one was struck from behind by the overhang of a railroad car. They had been careless in taking their position on the sidewalk. But this position had been assumed for some period of time and the jury could have found that that condition was not a proximate cause of the accident. That is, their carelessness, in relation to the negligence of the crewmen, was a remote cause of the accident. The train crewmen acted unreasonably, and in failing to look ahead, did not see the boys. As a result it was the negligent omission of the crew which directly and immediately caused the accident. In the instant case, the jury could well have decided that even though the defendant driver was negligent in failing to make proper observations, Mrs. Latta, had she been watchful, could have stepped out of the car's path. This constitutes an entirely different matter from her original negligence, if any, in entering the street.

The circumstances of the present case do not require our assessment of *Jurman v. Samuel Braen, Inc.,* 47 *N. J.* 586

(1966), in terms of its applicability to the facts in this case or its future vitality. It is debatable whether, in a *Jurman*-type case, an instruction covering contributory negligence in the terms of *Pangborn* is sound or particularly helpful to a jury in determining the issue of proximate cause and legal fault. The *Pangborn* doctrine evolved to ameliorate the sometimes harsh result of having plaintiff's negligence bar any recovery under the common law doctrine of contributory negligence. *Pangborn* can, and undoubtedly will, be reexamined shortly in cases which will arise under the new comparative negligence statute, *N. J. S. A.* 2A:15–5.1 *et seq.*

To reiterate, the trial court here failed to emphasize to the jury the importance, in determining proximate cause, of examining the culpable conduct of both parties up to the happening of the accident.

For these reasons we find that the jury instruction utilized by the trial court was erroneous.

## II

Plaintiff contends that even if the particular instruction quoted above was incorrect, the charge as a whole was not misleading. Reversible error will not be found where the charge, considered as a whole, adequately conveys the law and would not confuse or mislead the jury, even though part, standing alone, might be incorrect. *Jurman, supra,* 47 *N. J.* at 592; *Stackenwalt v. Washburn,* 42 *N. J.* 15, 26–27 (1964). Although the instructions generally consisted of the standard charge, the erroneous passage was twice given to the jury thus emphasizing its importance. We have subjected the record to careful scrutiny and conclude that the error committed was capable of misleading a jury in that it suggested that Mrs. Latta's possible failure to watch as she crossed need not have been considered.

Accordingly, the judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice Hughes and Justices Mountain, Sullivan, Pashman, Clifford, Schreiber and Handler—7.

*For reversal*—None.