**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2753-18T1

CORA KERTON, on behalf of
J.R., a minor,

    Plaintiff-Appellant,

v.

HUDSON COUNTY, HUDSON
COUNTY BOARD OF EDUCATION
FOR SCHOOLS OF TECHNOLOGY,
SUPERINTENDENT FRANK
GARGIULO, and PRINCIPAL
BARBARA MENDOLLA,

    Defendants-Respondents.

_____

Argued telephonically April 21, 2020 –
Decided May 20, 2020

Before Judges Yannotti, Currier and Firko.

On appeal from the Superior Court of New Jersey, Law
Division, Hudson County, Docket No. L-3406-17.

Luretha M. Stribling argued the cause for appellant.

John R. Dineen argued the cause for respondent Hudson County (Netchert, Dineen & Hillmann, attorneys; Esther Bodek, of counsel and on the brief).

Roshan D. Shah argued the cause for respondents Hudson County Schools of Technology, Frank Gargiulo and Barbara Mendolla (Scarinci & Hollenbeck, LLC, attorneys; Roshan D. Shah, of counsel and on the brief; Kevin M. Foltmer and Brent M. Davis, on the brief).

PER CURIAM

Plaintiff appeals from orders entered by the trial court on February 15, 2019, which granted motions for summary judgment by defendants County of Hudson (County), the Board of Education for the Hudson County Schools of Technology (HCST), Frank Gargiulo, and Barbara Mendolla. We affirm.

I.

In August 2017, plaintiff filed a complaint on behalf of her daughter, J.R., who was a minor at the times relevant to the claims asserted.[1] Plaintiff alleged that on October 8, 2014, J.R. sustained an injury to her foot while participating as a student in a gym class at County Prep, a high school in the HCST's district. She claimed defendants were negligent in the management and scheduling of

---

[1] We use initials to identify J.R. because the claims arose when she was a minor.

gym classes at the school and that such negligence was a proximate cause of J.R.'s injury.

The record shows that in the fall of 2014, J.R. was a sophomore at County Prep. At that time, Gargiulo was Superintendent of the HCST and Mendolla was Principal of County Prep. Hudson County provides funds for the HCST, but it does not hire, fire, or supervise teachers in the HCST. Moreover, the County does not own the HCST's school buildings.

Mendolla was responsible for creating the school's master calendar. At County Prep, there are nine scheduled class periods during the school day, each approximately forty minutes. The County Prep building has one gymnasium, which is shaped like a rectangle. A fitness room is located at the rear of the gymnasium, which includes treadmills and free weights. The gym teachers have an office located on one side of the gymnasium.

In 2014, two gym classes and one fitness class typically used the gymnasium during a single class period. Each class consisted of between twenty to twenty-four students, and one teacher would be assigned to each class. According to HCST, the gymnasium's maximum capacity is 135 students.

Each gym teacher ordinarily provided instruction to that teacher's class for an assigned activity. However, at certain times in 2014, all three classes

3

were brought together for joint instruction, which sometimes included running exercises. Such joint instruction occurred at least once a week. In the fall of 2014, J.R.'s schedule at County Prep included a second-period physical education class with teacher Doreen Bryant. A gym class, taught by a "Mr. Downs," and a fitness class, taught by Peter Ohanyan, also were assigned to the gymnasium for that period.

On October 8, 2014, students in all three classes performed certain stretching exercises separately. The three classes then were brought together for other exercises. A teacher instructed the students to begin interval running, which required that they transition from walking to running and back to walking at the sound of a whistle.

J.R. stated that she had transitioned from walking to running for about thirty seconds when she approached students who were still walking. She attempted to go around them when she fell. J.R. claimed certain students were using cell phones at the time.

Ohanyan and Downs were present in the gym when J.R. fell. Ohanyan testified that in 2014, students were permitted to use cell phones during running exercises "to create a little bit more motivation." He stated, however, that at the

time, the school did not have a policy prohibiting students from using cellphones.

At her deposition, J.R. testified that when she fell, Bryant was either in the gym teacher's office or seated outside of the office. J.R. said she did not see Bryant enter the office after Bryant led the students in her class in the stretching exercises. After J.R. fell, Ohanyan helped her into a chair. She was placed in a wheelchair and taken to the nurse's office. Plaintiff came to the school and transported J.R. to a hospital where x-rays were taken.

J.R. began treatment with Dr. Thomas J. Azzolini. He opined that when J.R. fell, she suffered a "displaced fracture of the fifth metatarsal base" of her right foot and an "avulsion fracture to the tip of the fibular malleolus" in her right ankle. On October 21, 2014, J.R. had surgery to repair the fracture of her foot and stabilize the ankle. Thereafter, J.R. received physical therapy and periodically returned to Dr. Azzolini for checkups. In July 2016, J.R. underwent another surgical procedure and a screw that had been used to repair the fracture was removed.

In August 2018, when she was deposed, J.R. was a sophomore in college. By that time, Dr. Azzolini had cleared her to return to any activity in which she chose to participate. J.R. testified that the injuries did not cause her to miss

work or prevent her from participating in any activities. She also testified that she would occasionally work a five-hour shift, on her feet at a restaurant, without taking a break.

J.R. was asked to identify the activities she has difficulty engaging in since the accident. She stated that she has trouble wearing "three-inch-and-above" high-heeled shoes for extended periods of time, which she used to do about six times a year before the accident. J.R. also stated that she now walks with a limp, which she described as a "waddle."

In December 2018, the HCST, Gargiulo, and Mendolla (the HCST defendants) filed a motion for summary judgment. They argued that plaintiff failed to establish that at the time J.R. fell, the County Prep gymnasium constituted a dangerous condition of public property under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. They also argued that: J.R.'s injuries did not meet the threshold for recovery under the TCA; plaintiff did not show that the HCST defendants breached any duty of care; and plaintiff failed to establish any basis for liability on the part of Gargiulo or Mendolla.

Thereafter, the County filed a cross-motion for summary judgment. The County argued that it could not be liable for J.R.'s injuries because it merely provides funding for the HCST and does not employ or supervise the HCST's

teachers. The County further argued that plaintiff's negligence claim failed because she could not establish a standard of care for the teachers at County Prep without expert testimony. Plaintiff opposed the motions.

The judge heard oral argument and placed his decision on the record. The judge noted that plaintiff was not asserting a claim that the County Prep gymnasium constituted a dangerous condition of public property. Rather, plaintiff was asserting claims based on the alleged negligence of defendants. The judge determined that the negligence claims failed as a matter of law because plaintiff did not establish the standard of care owed by a "teacher who is supervising a large gym class in the middle of the day[.]"

The judge stated that proving such a standard would require the "expertise of someone who has experience training in education . . . and [in] supervising children in class." The judge also found that the common knowledge doctrine did not relieve plaintiff of the obligation to present expert testimony. The judge stated that the doctrine did not apply because determining the duty owed by a person teaching a high school gym class is "beyond the ken of an ordinary jury."

The judge did not decide whether J.R.'s injuries met the threshold for recovery under the TCA. The judge emphasized that plaintiff's failure to present expert testimony on the standard of care applicable to her negligence claims was

7

"the only reason why [he was] going to grant [summary judgment]." Accordingly, the judge entered orders granting summary judgment in favor of defendants. This appeal followed.

## II.

On appeal, plaintiff argues that the motion judge erred by failing to apply the correct standard for summary judgment motions. She contends the judge erroneously weighed and evaluated the evidence, which is a task that should be performed by the trier of fact. She also argues that the judge erred by finding that she required expert testimony to establish the standard of care for her negligence claims and by refusing to apply the common knowledge doctrine. In addition, plaintiff argues the judge exhibited bias during the oral arguments on the summary judgment motions.

When reviewing an order granting summary judgment, we apply the same standard that the trial court applies when ruling on the motion. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). The court should grant summary judgment when the evidence before the court on the motion "show[s] that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

A-2753-18T1

"An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid. The trial court should not hesitate to grant summary judgment "when the evidence 'is so one-sided that one party must prevail as a matter of law.'" Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

To succeed in a negligence action, a plaintiff must prove that: (1) the defendant owes the plaintiff a duty of care, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered actual damages. Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 400 (2009) (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 584 (2008)). If a plaintiff fails to establish any of the above elements, the defendant is entitled to judgment as a matter of law. Davis v. Brickman Landscaping, LTD., 219 N.J. 395, 414 (2014).

Here, the material facts are not in dispute. As noted previously, in October 2014, J.R. was a student at County Prep and she was injured while participating in certain exercises during gym class. She claims defendants were negligent

9

because the school scheduled three classes for gym at the same time; failed to ensure that all three teachers remained with their students during gym class; and permitted students to listen to electronic devices while performing exercises.

The motion judge determined that in order to prevail on these claims, plaintiff was required to present expert testimony establishing the applicable standard of care. Plaintiff argues, however, that expert testimony was not required in this case. We disagree.

It is well established that teachers and school administrators in New Jersey have a duty to supervise children in their facilities. Jerkins v. Anderson, 191 N.J. 285, 296 (2007); see also L.E. v. Plainfield Public School District, 456 N.J. Super. 336, 346 (App. Div. 2018) (listing examples of cases imposing a duty of supervisory care on school officials). Therefore, teachers and other school officials have a general duty to exercise "that degree of care which a person of ordinary prudence, charged with comparable duties, would exercise under the same circumstances." Caltavuturo v. City of Passaic, 124 N.J. Super. 361, 366 (App. Div. 1973).

However, if "the jury is not competent to supply the standard by which to measure the defendant's conduct, . . . the plaintiff must instead establish the requisite standard of care and defendant's deviation from that standard by

presenting reliable expert testimony on the subject . . ." Davis, 219 N.J. at 407 (internal quotations omitted). Expert testimony is required when the matter to be dealt with is "so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the [defendant] was reasonable." Ibid. (citing Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982)). Without expert testimony, the jury would have to speculate as to the applicable standard of care. Ibid. (citing Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001)).

Therefore, a plaintiff must present expert testimony to establish the applicable standard of care where the subject matter to be addressed is beyond the ken of the average juror. See Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 444 (1993) (functions and responsibilities of real-estate brokers); Giantonnio v. Taccard, 291 N.J. Super. 31, 43 (App. Div. 1996) (precautions required for the safe conduct of a funeral procession); Fantini v. Alexander, 172 N.J. Super. 105, 108-10 (App. Div. 1980) (standards of conduct for those teaching karate).

Here, the motion judge correctly decided that the average juror does not have the required understanding of the manner in which school administrators schedule classes, whether students in gym class should be permitted to use electronic devices while exercising, and the level of teacher supervision required

11

when three gym classes have class in a gymnasium at the same time. The judge correctly determined that these subject matters are "so esoteric that jurors of common judgment and experience cannot form a valid judgment." Scully v. Fitzgerald, 179 N.J. 114, 127 (2004) (quoting Butler, 89 N.J. at 283). As the judge noted, expert testimony on these matters is required from a person who has experience and training in education and the supervision of students.

Plaintiff argues, however, that the common knowledge standard relieves her of any obligation to present expert testimony to establish the standards of care for her negligence claims. The doctrine applies in "exceptional circumstances" when the common knowledge of jurors "is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts." Cowley v. Virtua Health Sys., __ N.J. __, __ (2020) (slip op. at 16) (quoting Hubbard v. Reed, 168 N.J. 387, 394 (2001)).

Here, the motion judge correctly determined that the scheduling of classes, the use of electronic devices by students while exercising in gym class, and the proper level of supervision by teachers are not matters in which jurors of ordinary intelligence can resolve plaintiff's negligence claims. Although teachers and school administrators have a general duty to exercise reasonable

12

care for their students, an expert with experience and training in education and the supervision of students is required to establish the standard of care for the specific claims asserted in this case.

In support of her arguments on appeal, plaintiff cites Jerkins, 191 N.J. at 285. In that case, a school dismissed a nine-year-old student on an early-dismissal day. Id. at 290. The student's family members claimed that they did not know early dismissal was scheduled that day. Id. at 291. The student walked off school grounds without an adult and he was stuck by a car a few blocks away. Id. at 290.

The Court held that in New Jersey, the schools have a duty of reasonable care for supervising the safety of students at dismissal. Ibid. The Court stated that schools must exercise reasonable care in supervising students, commencing when the students begin to arrive at the school and continuing from that point on. Id. at 299 (quoting Titus v. Lindberg, 49 N.J. 66, 74-75 (1967)).

We are convinced plaintiff's reliance upon Jerkins is misplaced. Jerkins addressed the standard of care that applies to the dismissal of students. In this case, plaintiff has raised specific claims regarding the scheduling of classes, the use of electronic devices by students, and the number of teachers required to

supervise three classes in a gymnasium. The standards of care that apply to these specific claims must be established by expert testimony.

Plaintiff also contends the judge exhibited bias during the arguments on defendants' summary judgment motions. Plaintiff asserts that during the proceedings, the judge repeatedly interrupted her attorney, thereby showing a bias against plaintiff and favoritism towards defendants. The record does not, however, support this contention.

The transcript of the argument indicates that at times, the judge interrupted plaintiff's attorney during her argument, but the judge also interrupted the arguments by defendants' attorneys. Indeed, at one point, the judge told counsel for the HCST defendants that since he had cut off plaintiff's counsel during her argument, he would "cut [him] off too." We therefore reject plaintiff's contention that the judge exhibited bias during the proceedings.

Plaintiff further argues that: the judge failed to apply the correct summary judgment standard, weighed and evaluated the evidence which is the role of the trier of fact, failed to cite case law in support of his decision, and did not set forth a legal basis for the grant of summary judgment. We have thoroughly considered these arguments and conclude that they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-2753-18T1

## III.

Plaintiff also contends the motion judge erred by failing to consider the serious nature of J.R.'s injuries. She maintains J.R.'s injuries meet the threshold under the TCA for a permanent loss of bodily function in N.J.S.A. 59:9-2. The judge did not, however, decide whether plaintiff's injuries met the statutory threshold for recovery. The judge granted summary judgment to defendants because plaintiff did not present expert testimony to establish the standard of care for her negligence claims. Therefore, we need not address plaintiff's contention that J.R.'s injuries meet the threshold for recovery under the TCA.

In addition, plaintiff contends the judge erred by finding the County had no liability in this matter. Plaintiff argues that because the County provides substantial funding to the HCST it is financially responsible for the alleged negligence on the part of the HCST defendants.

We note that at oral argument, the judge agreed the County had no potential liability in this case. The judge commented that the County "gets out separately" but he would not "put that in the order" because it was "on the record." The judge also stated that if plaintiff's claims were ever reinstated, the HCST would be the only defendant.

A-2753-18T1

In any event, as we have explained, the judge granted summary judgment to the County and the HCST defendants because plaintiff did not present expert testimony to support her negligence claims. We affirm the orders granting summary judgment on that basis and that basis alone. Therefore, we need not address plaintiff's contention that the County is potentially liable for the alleged negligence of the HCST defendants.

Furthermore, on appeal, the HCST defendants argue that plaintiff failed to establish a basis for liability under N.J.S.A. 59:4-2, which applies to claims based on the dangerous condition of public property. At oral argument, the judge noted that plaintiff was not pursuing a claim based on an alleged dangerous condition of public property. Because we have decided that the judge correctly granted summary judgment in favor of defendants on other grounds, we need not consider this argument.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16